UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BORIS SHIHINSKI,**<br><br>**Plaintiff,**<br><br>**WELLS FARGO, N.A., et al.**<br><br>**Defendants.** | Civil Action No. 22-7521 (WJM) (CLW)<br><br>REPORT AND RECOMMENDATION |

**CATHY L. WALDOR, U.S.M.J.**

This comes before the Court upon Defendant Block, Inc.'s motion to compel arbitration. (ECF No. 20). In accordance with Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court resolves Defendant's application without oral argument. Upon careful consideration of the record for this matter; and for good cause shown; and

**WHEREAS** Plaintiff alleges that non-party Tamare Walker assaulted him on two occasions, stealing his cellular phone, wallet, and personal identification documents, and using them to effectuate fraudulent transfers from Plaintiff's Wells Fargo accounts using the Zelle and Cash App applications. (Compl. ¶¶ 14-44, ECF No. 1). Plaintiff filed a police report concerning the incident and disputed the transfers with Wells Fargo and through the Cash App application. (*Id.* ¶¶ 40-48). Wells Fargo ultimately denied his dispute, and Cash App never provided a substantive response. (*Id.* ¶¶ 48-52). Plaintiff appealed Wells Fargo's decision, which Wells Fargo denied, and Plaintiff also filed a claim with the Consumer Financial Protection Bureau, which Wells Fargo similarly denied. (*Id.* ¶¶ 53-57). Plaintiff also wrote a letter to Defendant Block, Inc. (which offers the Cash App software) disputing the transactions on his Cash App account, but never received a response. (*Id.* ¶ 20). Based on the foregoing, Plaintiff filed a Complaint in the

United States District Court asserting claims against Wells Fargo and Block, Inc. under the Electronic Funds Transfers Act, 15 U.S.C. § 1693 et seq. (*Id.* ¶¶ 67-80); and

**WHEREAS** Defendant Block, Inc. has filed a motion asking the Court to dismiss Plaintiff's claims against it and to compel the parties to engage in binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"); (ECF No. 20); and

**WHEREAS** "[a]rbitration agreements are essentially contracts that predetermine that a dispute between parties will be decided by an arbitrator, rather than in court." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 214 (3d Cir. 2019); and

**WHEREAS** the FAA "requires courts to 'rigorously enforce arbitration agreements according to their terms'". *Id.* at 553 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013)). "Under the FAA the district court must be satisfied that the parties entered into a valid arbitration agreement. In conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) (citing 9 U.S.C. § 2); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009) ("Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement.") (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). "Once such an agreement is found, the merits of the controversy are left for disposition to the arbitrator. Moreover, there is a strong presumption in favor of arbitration, and doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Great W. Mortg. Corp.*, 110 F.3d at 228 (citations omitted). Indeed, "'[a]n order to arbitrate the particular grievance should not be

denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); and

**WHEREAS** "to the extent [a question of contract enforceability] implicates the threshold question of whether the parties are bound by an agreement to arbitrate, it is referred to as a gateway question of arbitrability and is typically resolved in court." *Id.* at 215. The parties may contract around that "typical route" by including a delegation clause "that reserves arbitrability questions for the arbitrator to decide." *Id.* (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 72, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)). "Where such a clause is included, courts cannot decide threshold questions of arbitrability 'unless a party challenge[s] the delegation clause [specifically] and the court concludes that the delegation clause is not enforceable.'" *Id.* (quoting *MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018)) (brackets in original); and

**WHEREAS** the record reflects that:

> In order to use Cash App, a customer must first download the application and sign up for an account. A customer cannot use Cash App without first completing the registration process, which a customer can complete on a computer or mobile device. A customer cannot complete the registration without agreeing to the terms of service.

(Decl. of Tania Valrani ¶ 6, ECF No. 20-2); and

**WHEREAS** Plaintiff completed the registration process for the Cash App software on March 16, 2019. (*Id.* ¶ 7). That process required Plaintiff to provide and verify his phone number. (*Id.* ¶¶ 8-9). "At or around the same time, Block's server sent to Plaintiff a text message containing a one-time verification code, that said, 'By entering, you agree to the Terms, E-Sign Consent, and Privacy Policy: https://squareup.com/legal/cash-ua." (*Id.* ¶ 9). "The hyperlink contained in the

text message directed Plaintiff to the General Terms of Service (the 'General TOS')." (*Id.* ¶ 10); and

**WHEREAS** the first paragraph in the General TOS states, in relevant part: "By using any of the Services, you agree to these General Terms and any policies referenced therein . . . including terms that . . . require individual arbitration for any potential legal dispute (see Section 21)." (*Id.* at Ex. A, p. 5 of 14). Section 21 of the General TOS, in turn, provides in relevant part:

> You and Square agree to arbitrate any and all Disputes by a neutral arbitrator who has the power to award the same individual damages and individual relief that a court can. ANY ARBITRATION UNDER THESE GENERAL TERMS WILL ONLY BE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS, CLASS ACTIONS, REPRESENTATIVE ACTIONS, AND CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED. YOU WAIVE ANY RIGHT TO HAVE YOUR CASE DECIDED BY A JURY AND YOU WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS ACTION AGAINST SQUARE . . . All Disputes will be resolved finally and exclusively by binding individual arbitration with a single arbitrator (the "Arbitrator") administered by the American Arbitration Association (https://www.adr.org) according to this Section and the applicable arbitration rules for that forum. The Arbitrator shall be responsible for determining all threshold arbitrability issues, including issues relating to whether the General Terms and/or Additional Terms (or any aspect thereof) are enforceable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel . . . The Federal Arbitration Act, 9 U.S.C. §§ 1-16, fully applies. If you are a consumer bringing a claim relating to a transaction intended for a personal, household, or family use, any arbitration hearing will occur within the county where you reside … The arbitrator's award will be binding on the parties and may be entered as a judgment in any court of competent jurisdiction.

(*Id.* at 12-13 of 14).[1] The General TOS further defines the term "Dispute" as "any claim, controversy, or dispute between you and [Block, Inc.], its processors, suppliers or licensors (or

---

[1] While the General TOS refers to "Square", that entity is now known as Defendant Block, Inc. (Valrani Decl. ¶ 2, ECF No. 20-2).

their respective affiliates, agents, directors or employees), including any claims relating in any way to these Terms or the Services, or any other aspect of our relationship." (*Id.* at 12 of 14); and

  **WHEREAS** Plaintiff entered the verification code that Defendant Block, Inc. provided, signifying his agreement to the General TOS. (*Id.* ¶ 11). Plaintiff thereafter began using the Cash App program. (*Id.* ¶¶ 13). "If Plaintiff had not submitted the verification code and agreed to the General TOS, he would not have been able to create or utilize his Cash App account." (*Id.* ¶ 14); and

  **WHEREAS** Plaintiff has not opposed Defendant Block, Inc.'s motion or otherwise challenged its arguments or representations concerning the parties' relationship, in general, or the terms or applicability of the General TOS, in particular; and

  **WHEREAS** the Court finds that, given the plain terms of the General TOS, coupled with Plaintiff's acceptance of those terms when signing up for and later using the Cash App program, the parties entered into a valid arbitration agreement. The Court further finds that, as Plaintiff's claims against Defendant Block, Inc. in this matter are "Disputes" in accordance with Section 20 of the General TOS, the parties' arbitration agreement clearly covers those claims; and

  **WHEREAS** even if Plaintiff had raised a challenge regarding the arbitrability of his claims, and he has not, the parties have expressly delegated questions of arbitrability to the arbitrator. (*Id.*at Ex. A, p. 12 of 14, ECF No. 20-2) ("The Arbitrator shall be responsible for determining all threshold arbitrability issues . . ."); and

  **WHEREAS** the Court finds that Plaintiff must, therefore, pursue those claims through binding arbitration, in accordance with the terms of Section 21 of the General TOS; and

  **WHEREAS** neither Plaintiff nor Defendant Block, Inc. has asked the Court to stay Plaintiff's claims against Block, Inc. pending arbitration, in accordance with 9 U.S.C. § 3. Indeed,

Defendant Block, Inc. has expressly asked the Court to dismiss those claims. (*Generally* Def. Motion, ECF No. 20);

**IT IS** on this 23rd day of October, 2023,

**RECOMMENDED** that the District Court **GRANT** Defendant Block, Inc.'s motion to compel arbitration; (ECF No. 20); and it is further

**RECOMMENDED** that the District Court dismiss Plaintiff's claims against Defendant Block Inc., without prejudice, and direct Plaintiff and Block, Inc. to submit those claims to binding arbitration in accordance with Section 21 of the General TOS applicable to Plaintiff's Cash App account.

<u>s/ Cathy L. Waldor</u><br>
**Hon. Cathy L. Waldor, U.S.M.J.**

cc:   Hon. William J. Martini, U.S.D.J.